Good morning again. Our third case for this morning is Madison Mutual Insurance against Diamond State Insurance. Mr. Miller. May it please the Court, Counsel. My name is Dale Miller and I represent the Plaintiff Appellate, Madison Mutual Insurance Company. Mr. Miller, how are these two suits based on the same wrong? When the 2011 suit is based on Davidson's wrongful acts as neighboring landowners, as opposed to any professional breach, Mrs. Davidson committed in connection with the sale of the property in 1999. I can't get my head wrapped around it. Yes, Your Honor, and this goes to the appropriate standard for reviewing a complaint for purposes of the duty to defend. As set forth in Canfill and this Court's other precedents on this issue, we must first construe the complaint liberally in favor of finding a duty to defend. But surely that doesn't mean that every piece of background information in a complaint is enough to cling to and make it related to all other complaints. I'm concerned about the same thing, and of course we're all aware about the way that duty to defend cases are addressed, but at best the allegations in the 2011 lawsuit about how the Drivens came to own the property are a little bit of background. They could be deleted from the complaint and it wouldn't make any difference to any of the claims asserted. Well, Your Honor, it may be true, Your Honor, and it may be true that at over 300 paragraphs for the first amended and over 600 paragraphs for the second amended, that the overwhelming majority of the allegations could be deleted and should be deleted from a proper complaint. However, we must deal with, I respectfully submit, with the complaint that is... Oh, but I am, but if it's, but if, you know, you could allege in a complaint that the Cubs won the World Series, and, you know, okay, there it is, it's an allegation in the complaint, but it doesn't advance any of the claims being asserted between these parties. How was the 2006 litigation resolved? Your Honor, frankly, I'm not sure exactly how that litigation was resolved. I wasn't involved in the trial court proceedings. We've been told that it ended in an arbitration in favor of Ms. Davidson. That may well be right, Your Honor. Well, doesn't that, it seems to me that the fact that we've got background allegations about a prior dispute that has been resolved, adjudicated, makes this quite different from most of the situations that you're describing. Because, yes, theoretically, someone could raise a frivolous collateral challenge to the outcome. And if such a collateral challenge were raised, that would fall within a duty to defend, I would think. But since we're dealing with the complaint as it is, and it does not assert a claim based on that 2006 litigation, it's a little hard to see why we should treat the complaint in 2011 as if it included such a frivolous collateral challenge. Well, Your Honor, under this Court's standards, we simply have to take the eight corners of the complaint as it exists and And there's no such claim asserted. Your Honor, I respectfully submit that the predicate facts necessary for the claim are asserted. We've identified those as Which of the claims alleged in the 2011 litigation actually would you think depends on the allegation that Mrs. Davidson failed to disclose that the dam was constructed without a permit? Your Honor, I cannot with all respect You should be able to answer that question because that's your eight corners. There needs to be something for which the permit or not in the dam is even tangentially relevant. Your Honor, those allegations about the lack of permit for the dam are incorporated into all of the counts. So for malicious prosecution, for a negligent infliction of emotional distress, those allegations are part of those counts because of the way that the complaint is written. Every count rolls into it every prior allegation. So when we get to the final count in both complaints, it consists essentially of every allegation made. So those allegations are certainly part of each of the counts. But I guess I'm still resisting the notion that no matter how irrelevant, if you have put something into a complaint, then it makes that complaint related to any other complaint that's ever been filed with the same fact, whether it was relevant or irrelevant in the earlier case. It just doesn't make sense to me. There are causes of action pleaded in the 2011 lawsuit, and whether there was disclosure about the way the dam was constructed does not seem to have anything to do with it. Well, Your Honor, I'm aware of no case that has looked at the duty to defend and said, well, we're going to set these aside, as Diamond State suggests, set aside allegations based on the fact that they constitute mere background or mere contextual allegations. I'm not aware of any standard in the Illinois pleading that says that certain allegations don't count because they're background or contextual. Because they don't contribute anything to the stating of a cause of action. That's what the Illinois courts would say. They wouldn't say it maybe the opposite way that I just have. And I'm also troubled by what seems to be a very aggressive notion of cause and fact. I feel as though, you know, maybe they should sue because the Davidsons got married and moved down to southern Illinois. Or maybe they should sue, I mean, you know, sooner or later they should sue Adam and Eve. Because had it not been for them, no one would be here. And there's some outer limit. Yes, Your Honor, you're absolutely correct. There is an outer limit. The issue here is that on appellant's brief at page 32, we discuss allegations, in fact, sections of the First Amendment and Second Amendment complaint that discuss dam permitting. Are these directly tied to the lack of a permit? It seems unclear to me. It also seems unclear to me. Wouldn't there be a claim or issue preclusion problem if any of the claims in the 2011 suit actually turned on the failure to disclose the lack of a permit for the dam? There very well may be, and that is an issue that Diamond State should have raised and could have easily extricated itself from the case by raising that and seeking to have any allegations of that nature dismissed. However, looking at the four corners, the allegations are made. And what gives force to those allegations is the catch-all request at the end of the complaints for all further relief that is just and proper in the words that affect it. No, that's an expansive argument, too. Because essentially you're saying, had it not been for Davidson's misrepresentations about the permit status of the dam, the Drivenses would not have bought the property, and if the Drivenses hadn't bought the property, then the Davidsons wouldn't have engaged in this close to unbelievable set of harassing actions and planning things and, you know, in many other ways harassing. And it's just to hang that all on, and we'd like any other relief you can give us, which is usually about, you know, damages, equitable relief, you know, it's not as aggressive as you're making it. Your Honor, it is not, respectfully, my position is that it is not clear what exactly should be deemed to be arising from the purchase of the property as a result of the failure to disclose the absence of a dam permit. Well, as Judge Hamilton pointed out, that dispute's over and done with anyway. And that's true, but that point is irrelevant for purposes of the assessment of the duty to defend under the four corners of the complaint. So in your view, then, we need to treat this complaint as if it were asserting a collateral challenge to the outcome of the 2006 litigation? No, no, Your Honor. We don't need to go that far. We can just simply ignore the 2006 litigation. We only need to look here. You can't ignore it. You've just been saying that everything that supported it. You've got a claims-made policy that you're trying to enforce. I should clarify. We can ignore any collateral estoppel argument related to that. Absolutely it matters what was said in that 2006 litigation because that established the wrongful act that then is realleged in 2011. In terms of whether there's collateral estoppel, though, that issue is not pertinent to an assessment of the duty to defend under the four corners of the complaint. I would have thought it's the only pertinent thing because if you have any ground at all, if a frivolous attack on the earlier litigation has been brought that we have to spend some time defending, then it brings the earlier litigation in. It's the only thing you could say. Yes, Your Honor, and the duty to defend extends to grounds that are fraudulent, false, and completely baseless. Right, but if that were being asserted, you'd have, I think, a pretty good case. We won this case. Ms. Davidson won this case. Now we're getting this repeated collateral challenge. It's frivolous. Great, you still have a duty to defend on frivolous claims, but no such claim is actually asserted that I see in the new complaint.  Collateral attack on the 2006 litigation. Oh, correct. I don't see that claim. You're correct. I don't see that claim. What I see, though, is five, the dam permit disclosure allegations, we identify them as five allegations that set the predicate facts necessary to hold Geraldine Davidson liable for failing to disclose the absence of a dam permit when she sold the property to the Drivens. Those allegations are explicit in this complaint, and under the cases that Diamond State cites, those allegations matter when we get to the catch-all request for relief at the end for any other further relief. But you concede then. I mean, if I were to ask you right now to just tick off the actual claims for relief in the 2011 underlying lawsuit, none of them is about this. Well, Your Honor, all of them are about this. No, they aren't. They're about slandering Dr. Davidson and claiming that he's a murderer, and they're about planting crops, and they're about driving the car too slowly down the easement, and they're about other strange things. They aren't about anything to do with the dam or the 2006 litigation. Your Honor, but my point is that the allegations about the dam and the failure to disclose are made part of those. They're pledged specifically to be part of each of those counts. So I suppose, in Your Honor's fair reading of this, then they're not. In a technical sense, and I believe the sense that we're required to look at this under the Court's precedence on duty to defend is they are part of those allegations, but they don't need to be because there is that catch-all that allows the Court to grant any other further relief, and consistent with the cases cited by Diamond State, the catch-all further request for relief can be allowed to allow the Court to fashion relief based upon the allegations. And so when the allegations are there, as they are in this case, the Court can fashion relief in response to those. And I would like to address in particular the allegation concerning whether Geraldine Davidson failed to disclose the absence of a dam permit. The resolved issue. Pardon me, Your Honor? The issue that's already been resolved in 2006. Yes, that's right. Well, it was resolved at some point. I'm not sure that it was resolved when these complaints were filed. But Madison Mutual for that proposition relies on paragraph 136 of the First Amendment and 248 of the Second Amendment. That allegation says that Davidson sued the Drivens for slander because the Drivens had sued the Davidsons for fraud. When the Drivens purchased the property, and then it says, i.e., Davidson knew the dam wasn't permitted but failed to disclose this. Now that is a statement of fact. Diamond State says we have to ignore that statement of fact as a predicate fact for a claim in this action because it's couched in terms of what was pled in another complaint in the i.e. reference, which seems unclear the way that it's pled. My point, Your Honor, is that first, it's a fact. It's a statement of fact. And a statement of fact doesn't change. It's alleged that this is the fact. That statement puts Diamond State and puts Geraldine Davis on notice that the Drivens are claiming that there was a failure, that Geraldine Davidson failed to disclose the absence of a dam permit. Second, to take that fact out of the complaint, essentially, to void out that fact based upon the utterly ambiguous context of this reference to this other complaint, or actually two other complaints, is we submit not inconsistent with interpreting a complaint for purposes of duty to defend. Okay. You're about to run out of time. I'm just going to alert you. Thank you, Your Honor. Okay. Thank you. Ms. Carstensen. I'm going to apologize. I'm kind of losing my voice, so I'll do the best I can. I think Your Honors are correct. The underlying complaint, which we did look to the four corners of, does not, and as I think has been admitted now, state a claim that relates back to the 2000 professional misconduct by Mrs. Davidson as a real estate agent when she represented the sellers of the property selling it to the Drivens without disclosing the dam permit. I had a hard time in reading the briefs, and now I'm glad to hear that there's been an admission that there's really no such claim. And if you look at the reply brief, I think the argument that they're trying to make is there's an emotional distress claim and there's a negligence claim, and because these facts are alleged, just setting forth the history of the case, that somehow transforms them into a claim pointed at Ms. Davidson's professional misconduct. Madison Mutual's reply brief places quite a bit of emphasis on paragraph 525 of that underlying complaint and the allegation that Mrs. Davidson owed the sellers a relator to act reasonably. Would you kindly discuss that allegation and its relevance to Diamond State's duty to defend? Well, the facts alleged in that complaint, you have to read that allegation as a whole, and it concludes by stating they owed a duty as neighbors to behave reasonably, not to harass, and I'm not going to detail the acts. We know there are pages and pages of them in that fashion. So it's really not pointing the theory of liability. The facts are not pointing to Mrs. Davidson's earlier conduct. And the same is true for the negligence claim they cite. That is, I think, count 18 of the second amended complaint, and that involves Mr. and Mrs. Davidson's conduct of projecting themselves into the permitting process and trying to, like, control who would do the permit, what contractor would be used. It relates nothing to what happened in 2006. Now, as far as the 2006 litigation is concerned, I understand that that was understood by Diamond State to be arising out of her professional activities. So can you illuminate us on whether that case is over once and for all and how it ended? As I understand it, we prevailed in the arbitration, and that is a fact. And then the case was globally settled. I believe what the trial court eventually dismisses the whole thing. So it's gone. Before or after the 2011 suit was filed? No, I know the settlement was after the 2011 suit was filed. But the arbitration might have been? I really am drawing a blank on when the arbitration was. If there was a global settlement after the 2011 complaint was filed, it's a little hard to see how it was not a global settlement, how it was a global settlement. Well, there was a settlement, and I think the arbitration issue was still on appeal, so that was included in it. Okay. And I believe they reserved the rights then to litigate this duty to defend issue. Okay. That's my understanding. Would you agree, Ms. Carstensen, that if the Dribben's second amended complaint had expressly attacked the resolution of the 2006 complaint, that even if you thought it was frivolous, they had no basis for upsetting that judgment, you would still owe a duty to defend? If it arose out of that 2006 complaint, yes, I would agree with that. But this complaint nowhere does that. I mean, try as you may, the case law is clear in Illinois. We're not ignoring facts, as counsel keeps saying. The facts pled aren't pointing to a theory of liability, as the district court correctly found here. The theory of liability alleged what were harassment, interference with easements, and other various things. Nothing to do with the dam. Nothing to do with the dam. Or professional conduct. Or professional conduct. And you have to, when viewing this, too, and then I'm going to sum up because my voice is failing, you have to view it in context of what the claims made policy covers, which is professional liability. The proper coverage vehicle for this suit was the more general liability provisions in the homeowner's policies, which covers this type of thing. And respectfully, I would ask that you affirm the district court's finding that we owe no duty to defend. And because that is such a broader duty, we also had no duty to indemnify this action. And I'll stand on my brief as to the alternate arguments made in the brief. Thank you, Your Honor. And I'm going to go home and kiss all my neighbors. Yes. Even the ones that I haven't loved up to this point. Me, too, including my neighbor who's been pounding with a hammer all summer. I feel much more love to him. Thank you, Your Honor. Thank you very much, Ms. Carstensen. You have about a minute, Mr. Miller, if you've got a final word. Thank you, Your Honor. Under this court's precedent, the question of whether a claim is alleged in the 2011 complaint is irrelevant. The question is whether there's a potential claim. There is a potential claim, and it's based upon the dam permit disclosure allegations and the catch-all request for relief at the end. In terms of paragraph 525. Sorry, where do we find that we have to worry about a potential claim that's not actually alleged? Yes, Your Honor. That's in PANFIL and the decisions that we cited in our brief. And I think it's extremely a well-established principle in Illinois that we look to potential claims. We don't need to find actual claims. I don't have time to go into more detail. Cases in our brief do address that. In terms of paragraph 525, that was a fallback paragraph. If we read the whole thing, it can still be read to allege a general duty of care. Our main paragraphs for supporting the breach of the duty of care are paragraphs 322 of Count 6 in the First Amendment and paragraph 528 of Count 8 in the Second Amendment complaints. Thank you, Your Honor. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.